IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHAWN LENOR OWEN,                                3:12-cv-01705-MA

              Plaintiff,                        OPINION AND ORDER

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

          Defendant.


ARTHUR WILBER STEVENS, III
Black Chapman Webber & Stevens
221 Stewart Avenue, Suite 209
Medford, Oregon 97501

    Attorneys for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

GERALD J. HILL
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

    Attorneys for Defendant


1 - OPINION AND ORDER

MARSH, Judge

Plaintiff, Shawn Lenor Owen, brings this action for judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act). See 42 U.S.C. §§ 401-434. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, I affirm the final decision of the Commissioner.

## PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for DIB on March 12, 2008, alleging disability beginning January 1, 2007, caused by chronic obstructive pulmonary disease (COPD), emphysema, bronchitis, asthma, ulcerative colitis, depression, and anxiety. Tr. 148. Plaintiff's date last insured is June 30, 2010. The Commissioner denied Plaintiff's claim initially and upon reconsideration. An Administrative Law Judge (ALJ) held a hearing on January 4, 2011, at which Plaintiff testified and was represented by counsel. Tr. 37-58. In addition, vocational expert Nancy Bloom was present throughout the hearing and testified. Tr. 58-69.

On January 12, 2011, the ALJ issued a decision denying Plaintiff's application. Tr. 15-25. The Appeals Council declined review and Plaintiff timely appealed to this Court. Tr. 1-3.

///

## FACTUAL BACKGROUND

Born on May 13, 1964, Plaintiff was 42 years old on the application date and 46 years old on the date of the hearing. Tr. 150. Plaintiff has an eleventh-grade education and past relevant work as a House Worker. Tr. 23, 152.

In addition to her hearing testimony, Plaintiff submitted three Adult Function Reports and a Drug and Alcohol Use Questionnaire. Tr. 154-61, 162-69, 213-20, 222-24. Plaintiff's then-husband, Donald R. Napier, and friend Loralee L. Ball, each submitted Third Party Function Reports. Tr. 189-96, 225-33. Although the record does not contain the opinion of any treating or examining physician, Paul Rethinger, Ph.D., reviewed Plaintiff's records and submitted a Psychiatric Review Technique, and Neal E. Berner, M.D., reviewed Plaintiff's medical records and submitted a Physical Residual Functional Capacity Assessment. Tr. 453-66, 481-88.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). Each step is potentially dispositive. The claimant bears the burden of proof at Steps One through Four. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). The burden shifts to the Commissioner at Step Five to

show that a significant number of jobs exist in the national economy that the claimant can perform. See Yuckert, 482 U.S. at 141-42; Tackett, 180 F.3d at 1098.

At Step One the ALJ determined that Plaintiff did not engage in substantial gainful activity during the period between her alleged onset date of January 1, 2007, and her date last insured on June 30, 2010. See 20 C.F.R. §§ 404.1571 et seq.; Tr. 17.

At Step Two the ALJ found that Plaintiff's COPD was a severe impairment. The ALJ additionally found that Plaintiff's anxiety was a medically determinable, though non-severe, impairment. The ALJ found Plaintiff's "gastrointestinal impairment is non-medically determinable." See 20 C.F.R. §§ 404.1520(c); Tr. 17-20.

At Step Three the ALJ determined Plaintiff does not have an impairment or combination of impairments that meet or medically equal any listed impairment. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526; Tr. 20-21.

The ALJ found Plaintiff has the residual functional capacity (RFC) to perform sedentary work, including standing and walking approximately two hours, and sitting approximately six hours in an eight-hour workday. In addition, the ALJ found Plaintiff can lift up to 20 pounds occasionally and 10 pounds frequently, and further limited Plaintiff to occasional crawling, climbing ladders, ropes, scaffolds, ramps, and stairs; and frequent balancing, stooping, kneeling, and crouching. Finally, the ALJ found Plaintiff must

avoid even moderate exposure to "dusts, fumes, odors, [and] chemical vapors, etc." Tr. 21-23.

At Step Four the ALJ found Plaintiff is unable to perform any of her past relevant work. <u>See</u> 20 C.F.R. §§ 404.1565; Tr. 23.

At Step Five, however, the ALJ found jobs exist in significant numbers in the national economy that Plaintiff can perform, including Type Copy Examiner, Sack Repairer, and Stuffer. <u>See</u> 20 C.F.R. §§ 404.1569, 404.1569a; Tr. 23-24.

Accordingly, the ALJ found Plaintiff was not disabled within the meaning of the Act.

### ISSUES ON REVIEW

Plaintiff raises three issues on appeal. First, Plaintiff argues the ALJ improperly made an adverse credibility finding as to Plaintiff's self-reported symptoms and limitations. Second, Plaintiff asserts the ALJ failed to find that her gastrointestinal impairments were a medically determinable impairment at Step Two. Finally, Plaintiff maintains the ALJ erroneously found Plaintiff's impairments, in combination, did not equal a listed impairment at Step Three.

### STANDARD OF REVIEW

The Court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Id.</u>  The Court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  <u>Martinez v. Heckler</u>, 807 F.2d 771, 772 (9th Cir. 1986).  If the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld.  <u>Andrews</u>, 53 F.3d at 1039-40.  If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner."  <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

### I.    Plaintiff's Testimony

Plaintiff first argues the ALJ improperly rejected her testimony.  In deciding whether to accept subjective symptom testimony, an ALJ must perform two stages of analysis.  20 C.F.R. § 404.1529.  First, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged.  <u>Smolen v. Chater</u>, 80 F.3d 1273, 1281-82 (9th Cir. 1996).  Second, absent a finding of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear, and convincing reasons for doing so.  <u>Id.</u> at 1281.  The ALJ's reasons

for rejecting a claimant's testimony must be supported by substantial evidence in the record. See Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008).

If an ALJ finds the claimant's testimony regarding her subjective symptoms unreliable, the "ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive." Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). In doing so, the ALJ must identify which testimony is credible and which testimony undermines the claimant's complaints, and make "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ may rely upon ordinary techniques of credibility evaluation in weighing the claimant's credibility. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).

At her January 4, 2011, hearing, Plaintiff testified that she vomits "six or seven, eight times a day." Tr. 42. Plaintiff noted that each of these vomiting spells last approximately one hour. Tr. 48.

As to her COPD, Plaintiff testified that she must use her nebulizer "five or six times a day." Tr. 42. Plaintiff reported using the nebulizer, however, makes her "jittery" and "anxious," and that her difficulty breathing sometimes causes urinary incontinence. Tr. 49. Plaintiff reported that her COPD causes her

pulmonary difficulties to the extent she cannot stand in the shower "without having to sit down three or four times." Tr. 45. Plaintiff reported, however, that she was not on supplemental oxygen, though it was a possibility in the future. Tr. 56.

In addition, Plaintiff testified that her anxiety causes her "problem[s] being around a lot of people." Tr. 42. As to her alcohol use, Plaintiff testified that she had abstained from alcohol for "three or four months," medical personnel had only discussed the issue with her once, and on the whole "[i]t's no big deal." Tr. 45-46, 54.

In an undated Adult Function Report, Plaintiff reported her daily activities were to wake up and make her husband's lunch and then go back to bed because she is too tired "to do anything all day." Tr. 154. Plaintiff later noted, however, that she feeds her animals and sometimes takes them for walks. Tr. 155. Plaintiff reported that she prepares simple foods in the microwave, but cannot do house or yard work. Tr. 156. As to activities outside her home, Plaintiff reported she cannot go out alone, but shops for groceries twice per month and goes to a bar "once in a while." Tr. 157-58. Plaintiff checked that her conditions affect her abilities to lift, squat, bend, stand, reach, walk, kneel, and climb stairs. Tr. 159. Plaintiff reported that she can only walk five feet before requiring five minutes of rest. Tr. 159.

In a May, 2008, Adult Function Report, Plaintiff reported that her day consists of waking up and eating so she can take her pills before laying down again while her medication takes effect. Tr. 162. Plaintiff reported that on a daily basis she does "what [she] can" around her home. Tr. 162. Plaintiff reported that she is capable of cleaning and doing laundry around the house, but only approximately once per week for about an hour on account of her COPD. Tr. 164-65. Plaintiff wrote that she was capable of shopping "once a week," but that it took "a long time." Tr. 165. Plaintiff, however, reported that she did not go anywhere on a regular basis, and her primary social activities were sitting and talking. Tr. 160. As to her functional capabilities, Plaintiff reported that she could lift five or six pounds, experiences shortness of breath during a wide range of physical exertion, and could only walk one-quarter of a mile before requiring five-to-ten minutes of rest. Tr. 167. Finally, Plaintiff noted that she has "ulcerative colitis" which makes her "sick to [her] stomach 24-7." Tr. 169.

In a December, 2008, Adult Function Report, Plaintiff described daily activities and limitations similar to those in her May, 2008, Function Report. Throughout most of her daily activities, Plaintiff reported having to pause to catch her breath. Tr. 214-15. Plaintiff reported that her ability to walk had

worsened, as she could only walk 100 feet before requiring 5 to 10 minutes of rest.  Tr. 218.

In her Drug and Alcohol Use Questionnaire dated January 2, 2009, Plaintiff reported that she drinks two-to-three beers once per month and had done so for the past two years.  Tr. 222. Plaintiff noted that her behavior is not affected by her consumption of alcohol and that she has never been in a treatment program for alcohol abuse.  Tr. 223.

The ALJ rejected Plaintiff's subjective reports because Plaintiff alleged medical conditions and symptoms that were not supported by the medical record, made several inconsistent statements about her alcohol use, demonstrated noncompliance with medical treatment and misused medical resources, and made inconsistent statements throughout the record regarding her symptoms and limitations.  Tr. 18-19, 22-23.  I conclude these reasons, taken together, constitute clear and convincing reasons to reject Plaintiff's testimony.

A.    Allegations Unsupported by Medical Record

The ALJ's finding that Plaintiff made allegations of medical limitations unsupported by the contemporaneous treatment record is amply supported by the administrative record.  As the ALJ noted, Plaintiff's allegations of extensive, persistent vomiting are not supported by medical findings.  Although the record contains myriad presentations to the emergency room with complaints of persistent

vomiting, the ALJ reasonably noted that Plaintiff's complaints of chronic, uncontrollable vomiting were never corroborated and at times were undercut by objective medical evidence.    Notably, on March 19, 2009, one of Plaintiff's primary care providers noted her "endoscopy did not show stigmata of chronic vomiting."    Tr. 679. Considering Plaintiff's allegations of extensive vomiting, this alone is compelling evidence to reject Plaintiff's testimony.

Plaintiff testified that her vomiting was one of the reasons she left her last job in August, 2007.    Tr. 40-41.    Notably, however, on March 20, 2008, Plaintiff showed "no evidence of bleeding or significant vomiting" in connection to her reported history of ulcerative colitis.    Tr. 341.    On June 17, 2009, Plaintiff presented to the emergency room with complaints of uncontrollable vomiting, but stopped vomiting once she arrived in the emergency room.    Tr. 605.    Indeed, throughout Plaintiff's many visits to the emergency room, there are few notes of Plaintiff continuing to vomit while in the hospital.    On November 13, 2009, Plaintiff was noted to be "occasionally wretching which was nonproductive and could be interrupted by conversation."    Tr. 516. On November 21, 2009, Josh Cook, D.O., noted that Plaintiff had no improvement of her symptoms with medication "until her ride came to take her home," at which point she had "complete resolution of symptoms."    Tr. 507.    Otherwise, Plaintiff's physicians have noted that imaging of Plaintiff's abdomen and bowels was unremarkable.

Tr. 675, 677. Accordingly, the ALJ reasonably found that Plaintiff's subjective reports of persistent and uncontrollable vomiting were unsupported by the record.

The ALJ also correctly noted that Plaintiff did not report the urinary incontinence she testified was a result of her breathing difficulties to any physician. As the ALJ also noted, Plaintiff repeatedly reported to the ALJ and medical providers that she has a history of ulcerative colitis, but no objective evidence supported this allegation and Plaintiff's primary care provider found this report "somewhat questionable." E.g., Tr. 49, 675, 677. Thus, I conclude the ALJ's citation of instances in which Plaintiff's subjective allegations were unsupported and even contradicted by the medical record is a compelling reason to reject Plaintiff's testimony.

## B. Inconsistent Statements Regarding Alcohol Use

The ALJ cited Plaintiff's inconsistent statements concerning her alcohol use as a reason to reject her testimony.[1] Indeed, the record is replete with inconsistent statements from Plaintiff

---

[1] Plaintiff briefly argues the ALJ improperly cited this reason without conducting a full drug and alcohol analysis. The drug and alcohol analysis is only necessary, however, when the ALJ finds drug and alcohol use is a "'factor material to the Commissioner's determination that the individual is disabled.'" Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007)(quoting 42 U.S.C. § 423(d)(2)(C)). The ALJ did not make such a finding in this case. Instead, the ALJ properly cited Plaintiff's inconsistent statements concerning alcohol use as a reason to reject Plaintiff's testimony.

concerning her alcohol use.  As noted, Plaintiff reported at the
hearing that she had abstained from alcohol for between three and
four months and that alcohol abuse had never been a problem for
her.  Tr. 45-46, 54.  In addition, in her January 2, 2009, Drug and
Alcohol Use Questionnaire, Plaintiff reported that she drinks "2 or
3 [b]eers" once per month and had been following this usage pattern
for "approximately two years."  Tr. 222.

On March 14, 2008, Plaintiff reported that she "drinks a few
beers a day," which her medical provider found significant to her
abnormal liver function findings.  Tr. 344.  On November 14, 2008,
Plaintiff reported during an endoscopy and colonoscopy that she
drinks two beers per day, but the physician noted Plaintiff "was
quite difficult to sedate.  This suggests that her history of two
alcoholic beverages daily may be an underestimate, and there may be
a more significant problem with alcohol dependence."  Tr. 490.

On March 19, 2009, Plaintiff reported to Leslie O'Meara, M.D.,
that she consumes "1-2 beers per week," but Dr. O'Meara noted that
"[h]er exam and notes around the endoscopy suggest otherwise."  Tr.
679.  On June 16, 2009, Plaintiff reported to emergency-room
personnel that she consumes "at least 2 drinks per day."  Tr. 600.
Around this time, emergency medical services noted that Plaintiff
had been "seen in a local bar on many occasions" and "[t]ransported
by EMS [greater than] 30 times."  Tr. 576.  On August 20, 2009,
Plaintiff reported "[o]ccasional use of alcohol."  Tr. 579.  On

October 13, 2009, Plaintiff "denie[d] use of alcohol." Tr. 543.
On November 13, 2009, Plaintiff reported "[s]he drinks
occasionally," but after being confronted by Josh Cook, D.O.,
Plaintiff admitted "recent and more frequent alcohol use." Tr.
518. Dr. Cook found Plaintiff's "alcohol abuse . . . to be the
most likely causative factor for this cyclic vomiting and abdominal
pain syndrome." Tr. 518. Nonetheless, Plaintiff was back in the
emergency room on November 21, 2009, where she "repeatedly lied" to
Dr. Cook and a nurse "about alcohol use." Tr. 507. Dr. Cook noted
that "[i]t is apparent there is significant alcohol abuse." Tr.
507.

Three weeks later, on December 9, 2009, Plaintiff reported to
Mark Press, FNP, her primary care provider, that she drinks "2 to
3 beers per week." Tr. 676. On December 23, 2009, Plaintiff told
Mr. Press that she only consumes one beer per week. Tr. 675. On
January 21, 2010, however, Plaintiff reported "she has not had any
alcohol but later in the visit [told Mr. Press] that she had two
beers yesterday to try and help with her rib pain." Tr. 674. Mr.
Press noted "[h]er somewhat inconsistent reporting of her alcohol
use and her recent fall is suspicious for continued alcohol use."
Tr. 674. On March 24, 2010, the most recent full medical record,
Plaintiff told Mr. Press "[s]he drinks about 2 beers every other
day." Tr. 713. The medical record, however, also contains a note
from Mr. Press dated December 29, 2010, one week before the

14 - OPINION AND ORDER

hearing, simply stating that "[Plaintiff] had an [appointment] today. I am told that she has been [alcohol] free [for] 3 months." Tr. 715.

There is ample evidence to support the ALJ's conclusion that Plaintiff made inconsistent statements regarding her alcohol use. While also reflecting negatively on Plaintiff's credibility in general, this observation carries additional weight in light of multiple medical providers connecting Plaintiff's alcohol use to her physical conditions. The ALJ's citation of Plaintiff's inconsistent statements regarding alcohol use is a compelling reason to reject Plaintiff's testimony.

### C.   Noncompliance with Treatment and Misuse of Medical Resources

The ALJ also rejected Plaintiff's testimony because Plaintiff demonstrated noncompliance with medical treatment, failed to seek ongoing treatment for her allegedly severe COPD symptoms, and misused medical resources. Tr. 18-19. The ALJ appropriately noted that Plaintiff sought relatively little medical treatment for her COPD. Although there is no question that Plaintiff's COPD is "severe," and the ALJ accordingly ascribed significant functional limitations on account of that condition, the ALJ also reasonably noted that Plaintiff's COPD and use of her nebulizer were typically not a primary focus of Plaintiff's many medical presentations. Tr. 22. The ALJ could reasonably find this suggested the functional

limitations associated with Plaintiff's COPD symptoms were not as severe as alleged.

Even more convincing is the ALJ's citation of noncompliance with medical treatment and misuse of medical resources. As the ALJ noted, Plaintiff departed a December 9, 2009, appointment with Mr. Press before its conclusion. Tr. 676. On November 13, 2009, Dr. Cook extensively discussed Plaintiff's noncompliance with medical treatment and misuse of medical resources:

> The patient presents with cyclic vomiting and cyclic abdominal pain and has been . . . seen multiple times here previous. There is an adrenal adenoma that appears to have been stable on CT scanning of this year. The abdomen is benign. The vomiting was resolved with sublingual Zofran, intramuscular Phenergan and Inapsine. The patient refused Phenergan suppositories and states that oral medications do not work. There appears to be noncompliance of the patient's taking of medications and a misperception of the efficacy of oral versus IV medications or suppositories leading to medication noncompliance. The case was discussed with Mark Press at the Mosaic Clinic in hopes that a patient care plan could be developed to improve the outpatient compliance and to better coordinate the emergency department management with that of the Mosaic Clinic. Specifically, the patient requested narcotics or Dilaudid and this would have no role in a case of a recurrent abdominal pain or cyclic vomiting patient, although has been frequently used to expedite disposition in the emergency department. At this time, and in light of recent colonoscopy, previous GI consult and other previous studies, there appears to be no other serious . . . or surgical cause of abdominal pain at this time.

Tr. 517 (errors in original).

Dr. Cook detailed Plaintiff's misuse of the medical system on November 21, 2009:

This patient returns for the 10th time in the last 2 months to the emergency department for recurrent abdominal pain and vomiting. The patient had told Tammy the registration personnel that she calls the ambulance because she gets into the emergency department quicker. She has her boyfriend usually bring her to the fire department to be then transported so that she can get into the emergency department more quickly. The patient then repeatedly lied to myself and to Holly, the nurse, about alcohol use. It is apparent there is significant alcohol abuse. This is most likely to be causing a significant component of this cyclic vomiting and abdominal pain the patient presents with. The emergency department workup at this time was grossly unremarkable other than a mildly elevated white blood cell count. She had no improvement with Inapsine and Phenergan until her ride came to take her home. She then had complete resolution of symptoms. In the presence of nurse, Holly, I discussed with the patient the need for treatment for alcohol abuse as well as the very clear abuse of the EMS system as well as the emergency department. I respectively discussed with the patient appropriate use of emergency services and the emergency department.

Tr. 507 (errors in original). In addition, the record is replete with instances of Plaintiff reporting to the emergency department with subjective reports of symptoms but no identifiable etiology.

The ALJ's rejection of Plaintiff's testimony on the basis of noncompliance with medical treatment, abuse of the medical system, and failure to seek ongoing treatment of her COPD, then, was supported by substantial record evidence. This provides an additional convincing reason to reject Plaintiff's testimony.

### D.   Inconsistent Statements Concerning Symptoms

Finally, the ALJ noted Plaintiff made other inconsistent statements about her functional limitations and symptoms. As the ALJ noted, Plaintiff' report that she vomits a minimum of six-to-

eight times per day is inconsistent with her reports to treatment providers of fewer vomiting spells.   Tr. 42, 675, 676, 713. Moreover, contrary to Plaintiff's report of very significant walking limitations, Plaintiff told medical providers on June 16, 2009, that she "walks daily."  Tr. 637.  Finally, in a chart note dated October 13, 2009, Plaintiff was noted to be a "poor historian."  Tr. 543.  Accordingly, the ALJ properly discussed inconsistent statements concerning Plaintiff's symptoms as a reason to discredit her testimony.

In sum, I conclude that the above reasons readily amount to clear and convincing reasons, supported by ample record evidence, to reject Plaintiff's testimony.  The ALJ properly made an adverse credibility determination.

## II.   Step Two

Plaintiff next argues the ALJ erred in failing to include a gastrointestinal impairment concerning Plaintiff's vomiting and abdominal pain at Step Two.  "At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments."  Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996).  An impairment is "severe" for Step Two purposes if it, in combination with other impairments, "significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  See also Smolen, 80 F.3d at

18 - OPINION AND ORDER

1290.    A claimant can only establish a medically determinable impairment at Step Two "if the record includes signs – the results of 'medically acceptable clinical diagnostic techniques,' such as tests – as well as symptoms, *i.e.*, [the claimant's] representations regarding his impairment." Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005).    Ultimately, however, Step Two "is a de minimis screening device to dispose of groundless claims," and an impairment or combination of impairments will only be found "not severe" if "the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'"    Smolen, 80 F.3d at 1290 (quoting Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)).    An error in failing to list a condition at Step Two is harmless if the ALJ considers the limitations posed by the allegedly omitted condition in formulating the RFC.    Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007).

The ALJ refused to include any gastrointestinal impairment at Step Two because "per all the objective evidence, an etiology has not been determined and her self-report of symptoms [is] questionable." Tr. 18.  Notably, Plaintiff does not argue the ALJ should have included any particular gastrointestinal impairment at Step Two, but instead that the ALJ should have included some impairment concerning her gastrointestinal complaints at Step Two.

The results of "medically acceptable clinical diagnostic techniques" were consistently benign, making the etiology of her

alleged vomiting unclear.   Tr. 675; <u>see</u> <u>Ukolov</u>, 420 F.3d at 1005.
In addition, as the ALJ noted, an endoscopy "did not show stigmata
of chronic vomiting."   Tr. 679.    Moreover, despite repeated
emergency department presentations, there is little objective
evidence of vomiting continuing through presentations in the
emergency department and, in any event, the ALJ appropriately
discounted Plaintiff's subjective reports as to the frequency and
severity of her alleged gastrointestinal limitations. Accordingly,
I conclude the ALJ permissibly found that the record did not
contain sufficient signs and symptoms to establish Plaintiff's
gastrointestinal complaints as a medically determinable impairment
at Step Two.

## III. **<u>Step Three</u>**

Finally, Plaintiff argues the ALJ erred in finding that
Plaintiff's medically determinable impairments did not equal any
listing.   "'[F]or a claimant to qualify for benefits by showing
that [her] unlisted impairment, or combination of impairments, is
'equivalent' to a listed impairment, [she] must present medical
findings equal in severity to all the criteria for the one most
similar listed impairment.'"   <u>Kennedy v. Colvin</u>, 738 F.3d 1172,
1176 (9th Cir. 2013)(quoting <u>Sullivan v. Zebley</u>, 493 U.S. 521, 531
(1990)).    "'A claimant cannot qualify for benefits under the
'equivalence' step by showing that the overall functional impact of
[her] unlisted impairment or combination of impairments is as

20 – OPINION AND ORDER

severe as that of a listed impairment.'" Id. (quoting Zebley, 491
U.S. at 531).  Thus, the claimant must show, based on medical
evidence in the record, that Plaintiff's impairments, in
combination, equal each criterion of the relevant listing.  Id.

Plaintiff asserts her combination of medically determinable
impairments equals Listing 3.02, which provides the listings for
those with "[c]hronic pulmonary insufficiency." 20 C.F.R. Pt. 404,
Subpt. P, App. 1 at 3.02.  For a person of Plaintiff's size, the
listing requires that the claimant have a forced expiratory volume
($FEV_1$) of 1.15 or less.  Id.  The only such test in the record
indicates that Plaintiff had an $FEV_1$ of 1.16.  Tr. 470.  Plaintiff
points to no evidence in the record – and the Court has located
none – demonstrating that Plaintiff's impairments, taken as a
whole, cause Plaintiff to have the equivalent of an $FEV_1$ of 1.15 or
below.  Accordingly, the ALJ appropriately found that Plaintiff's
combination of medically determinable impairments did not equal any
listing.  The ALJ did not err at Step Three.

///

///

///

///

///

///

///


21 - OPINION AND ORDER

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED this ___28___ day of October, 2014.

*Malcolm F. Marsh*
Malcolm F. Marsh
United States District Judge